(71 P.3d 1185)

No. 89,037

STATE OF KANSAS, *Appellee*, v. JACQULYN J. HUFF, *Appellant*.

Opinion filed July 3, 2003.

*Heather Cessna* and *Paige A. Nichols*, assistant appellate defenders, for the appellant.

*Kristi L. Barton*, assistant district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, for the appellee.

Before MARQUARDT, P.J., PIERRON, J., and ROBERT J. FLEMING, District Judge, assigned.

PIERRON, J.: Jacqulyn J. Huff appeals her sentences after entering guilty pleas to two felony and three misdemeanor offenses.

Huff was charged with two felony offenses (attempted aggravated robbery and possession of marijuana after a prior conviction) and three misdemeanor offenses (theft and two counts of endangering a child). All of the offenses occurred in August 2001.

Pursuant to a plea agreement, the State amended the attempted aggravated robbery charge to attempted robbery. It also recommended probation and concurrent sentences with an underlying prison term of 16 months. Huff pled guilty to the amended charge and the remaining four charges.

The trial court granted probation for 36 months. The prison sentences on the two felonies ran concurrently, resulting in a controlling prison term of 16 months. The jail sentences of 12 months on each of the three misdemeanors ran consecutive to each other and the felony prison term. Huff appeals her sentence.

Huff argues the trial court did not have statutory authority to impose consecutive jail sentences on the misdemeanor offenses. According to Huff, her consecutive sentences are illegal.

An illegal sentence is defined as " 'a sentence imposed by a court without jurisdiction; a sentence which does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence which is ambiguous with respect to the time and manner in which it is to be served.' [Citations omitted.]" *State v Scherzer*, 254 Kan. 926, 939, 869 P.2d 729 (1994). Whether a criminal sentence is illegal is a question of law, giving this court unlimited review. *State v. Sisk*, 266 Kan. 41, 43, 966 P.2d 671 (1998).

Huff objected to the consecutive misdemeanor sentences. She acknowledges K.S.A. 2002 Supp. 21-4720(b) gives the trial court discretion "to impose concurrent or consecutive sentences in multiple conviction cases," but argues that statute applies only to felony convictions because it is a part of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq*. She contends her argument is supported by the KSGA's definition of "imprisonment" and "prison." Those terms include only facilities operated by the Kansas Department of Corrections. K.S.A. 21-4703(m), (r).

The State quotes the following language from *State v. Reed*, 23 Kan. App. 2d 661, 663, 934 P.2d 157, *rev. denied* 262 Kan. 967 (1997): "[A] defendant may be sentenced to consecutive terms for any multiple misdemeanor convictions, in addition to the sentence imposed under 21-4720(b)(4) for any multiple felony convictions." The issue in *Reed* was different than the one presented here. However, its reasoning is useful.

In *Reed*, the defendant's sentences on his two felony convictions and three misdemeanor convictions ran consecutive to one another. He argued his total controlling term of confinement on all of the sentences violated the 1993 and 1994 versions of K.S.A. 21-4720(b)(4) because it exceeded twice his base sentence. The *Reed* court held that the 1993 version did not apply because the definition of a conviction event under K.S.A. 1993 Supp. 21-4703(c) did not include misdemeanor convictions. The 1994 version also did not apply because the definition of prison under K.S.A. 21-4703(r) did not include misdemeanor sentences as they are served in a county jail. 23 Kan. App. 2d at 663.

The rationale in *Reed* also applies here. K.S.A. 2002 Supp. 21-4720(b) applies to KSGA felony sentences, not misdemeanor sentences.

The State contends K.S.A. 21-4608(a) controls. "When separate sentences of imprisonment for different crimes are imposed on a defendant on the same date, . . . such sentences shall run concurrently or consecutively as the court directs." K.S.A. 21-4608(a).

Huff argues K.S.A. 21-4608(a) does not apply because the definition of "imprisonment" under K.S.A. 21-4703(m) does not include sentences that are served in a county jail. However, K.S.A. 21-4703(m) is a part of the KSGA; as such, it only applies to KSGA sentences for felony convictions.

The definition statute in article 46 for sentencing does not include the term "imprisonment." See K.S.A. 2002 Supp. 21-4602. Instead, the place of imprisonment for felony and misdemeanor sentences is governed by K.S.A. 2002 Supp. 21-4603d(a)(1). The trial court may "[c]ommit the defendant to the custody of the secretary of corrections if the current crime of conviction is a felony . . . or, if confinement is for a misdemeanor, to jail for the term provided by law." K.S.A. 2002 Supp. 21-4603d(a)(1). Unlike K.S.A. 21-4703(m), the term "imprisonment" is not defined by where the sentence will be served.

A review of other statutes shows the legislature applied the term "imprisonment" to both misdemeanor and felony sentences. A crime is defined as "an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine, or both imprisonment and fine, is authorized." K.S.A. 2002 Supp. 21-3105. If convicted of a misdemeanor, the defendant may be fined "instead of the imprisonment authorized by law." K.S.A. 2002 Supp. 21-4503a(b). The "terms of confinement" for the misdemeanor classifications are stated in K.S.A. 2002 Supp. 21-4502(1). The trial court may grant probation by releasing the defendant "after imposition of sentence, without imprisonment except as provided in felony cases." K.S.A. 2002 Supp. 21-4602(c).

The trial court had statutory authority to impose consecutive "imprisonment" sentences on the misdemeanor offenses under K.S.A. 21-4608(a).

We also find nothing illogical about a sentencing structure where a person charged with misdemeanors in addition to certain felonies can receive a greater sentence than someone who was convicted of only the felonies.

Huff further contends if there is authority to impose consecutive sentences on the misdemeanor offenses, the trial court abused its discretion by doing so. Specifically, she argues the trial court did not consider the State's recommendation for concurrent sentences and her rehabilitation efforts, or offer any justification for imposing consecutive sentences.

After considering the reports, the background of the defendant, the facts of the case, and the public's safety, the trial court determines the appropriate sentence by exercising its best judgment, common sense, and judicial discretion. An appellate court will not disturb a sentence that complies with the statutory guidelines if it is within the trial court's discretion and not a result of partiality, prejudice, or corrupt motive. *State v. Chastain*, 265 Kan. 16, 22, 960 P.2d 756 (1998). Judicial discretion is abused when the trial court's decision is arbitrary, fanciful, or unreasonable; that is, no reasonable person would take the trial court's view. *State v. Vanderveen*, 259 Kan. 836, 843, 915 P.2d 57 (1996).

Here, the robbery victim was Arlita Heath. Wilburn Childers, Huff's husband, approached Heath in a grocery store parking lot and grabbed her purse. As he got into a vehicle, Heath grabbed the straps of her purse and was dragged almost 200 feet before Childers let go of the purse. Heath suffered abrasions to her legs, hands, and shoulder. After his arrest, Childers told the officer that Huff had placed the car into drive, put her foot on the accelerator, and steered as he struggled with Heath over the purse. The theft victim was Diana Giesy. Giesy was in a Wal-Mart parking lot when Childers grabbed her purse and ran to a waiting car with Huff inside. Huff then took control of Giesy's property.

Childers said he committed two other purse snatches on that same day and Huff assisted him with one of them. He also admitted to getting cash and checks from a purse snatch 3 days later. Huff then assisted him in forging and cashing the checks. They used the proceeds to purchase crack cocaine. When the officer went to

Huff's motel room, she consented to a search and admitted that the marijuana he found was hers. After her arrest, Huff admitted she was involved in the incidents with Heath and Giesy and that her two children, who were less than 3 years old, were in the vehicle during the incidents. She admitted that she had smoked cocaine in the car between the incidents and she was pregnant.

The trial court imposed its sentence immediately after a discussion about Huff's history of drug addiction and domestic violence with her spouse, who was also addicted to drugs; her prior unsuccessful attempts to leave her husband; and Huff's positive steps after her arrest toward rehabilitation and reintegration with her children in the child in need of care case. The trial court did not state its reasons for imposing the consecutive sentences on the misdemeanor convictions.

However, the trial court gave as its reasons for the increased probation term on the felony convictions the seriousness of the crimes, Huff's need for long-term supervision, and the public's safety and welfare. The court also gave its reasons for ordering Huff to be supervised by community corrections: the seriousness of the charges and she received a presumptive probation sentence through the State's plea agreement. Huff's attorney stated forgery offenses were dismissed in another case, and the State cooperated in the plea agreement terms so Huff's presumptive sentence would be probation. These reasons were most likely the reasons for imposing consecutive sentences on the misdemeanor offenses.

Reasonable persons could differ with the trial court's decision. Some would impose concurrent sentences based upon the State's recommendation and Huff's short-term rehabilitative efforts. Others would impose consecutive sentences based upon her involvement in serious offenses and Huff's long term history of drug abuse that resulted in a serious risk to the public and her children. The trial court did not abuse its discretion.

Huff's last argument is that the trial court's imposition of a 35-month probation term is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), as interpreted by the Kansas Supreme Court in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001).

Huff's constitutional challenge involves a question of law, giving this court unlimited review. *State v. Carr*, 274 Kan. 442, 455, 53 P.3d 843 (2002). Huff did not raise this issue to the trial court. The general rule is constitutional issues are not properly before an appellate court when they were not raised below. The exceptions to that general rule were recognized and applied in *Gould* to consider the defendant's *Apprendi* argument for the first time. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002). We can consider the issue.

Huff's attempted robbery conviction, a severity level 7 person felony, was the primary offense. Her criminal history score was G. The presumptive sentence was probation with a range of 15-16-17 months for the underlying prison term. Under K.S.A. 2002 Supp. 21-4611(c)(1)(B), the recommended probation term for a severity level 7 nondrug offense is 24 months.

The State claims Huff's 36-month probation term is not a departure sentence and is not appealable. K.S.A. 2002 Supp. 21-4611(c)(5) provides that if the trial court states the reasons for its finding that public safety will be jeopardized or the inmate's welfare will not be served by the length of the recommended term of probation, it "may impose a longer period of probation. Such an increase shall not be considered a departure and shall not be subject to appeal."

Here, the trial court's reasons for the longer probation term were the seriousness of the crime, Huff's need for long-term supervision, and the public's safety and welfare. This decision was made after a discussion about Huff's history of drug addiction and domestic violence with her spouse, who was also addicted to drugs and involved in the crimes, and Huff's positive steps toward rehabilitation and reintegration with her children in the child in need of care case.

Where the trial court failed to comply with statutory prerequisites, an increase from the recommended probation term must be vacated and remanded for resentencing. *See State v. Whitesell*, 270 Kan. 259, 292-94, 13 P.3d 887 (2000). Huff does not contest the sufficiency of the trial court's reasons. Rather, she claims two changes have occurred since *Whitesell*. First, she points to the 2000

amendments to K.S.A. 1999 Supp. 21-4611(c)(3)-(5) which reduced the probation term for nondrug cases for severity level 8, 9, and 10 offenses and provided that an increased probation term was not a departure or appealable sentence. See L. 2000, ch. 182, § 6.

Huff does not explain how the 2000 amendments support her argument. The 2000 amendments regarding severity level 8, 9, and 10 offenses do not apply because Huff's conviction was a severity level 7 offense. The 2000 amendments regarding a departure or appealable sentence do apply, meaning this court does not have jurisdiction over Huff's increased probation term. Further, the 2000 amendments did not change the provision that the maximum probation term that could be imposed was 60 months or the maximum prison term for the offense, whichever is longer. See K.S.A. 2002 Supp. 21-4611(c)(6). This argument fails.

Huff's second point is based on the *Gould* decision. In *Gould*, the Kansas Supreme Court applied the holding in *Apprendi* to K.S.A. 2000 Supp. 21-4716 for upward durational departure of prison sentences. 271 Kan. at 414. In *Apprendi*, the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Huff does not address other unsuccessful challenges under *Apprendi* and *Gould* involving dispositional departures from presumptive probation sentences.

In *Carr*, the court concluded the imposition of a dispositional departure prison sentence rather than a grant of probation did not increase the sentence beyond the statutory maximum; thus, *Apprendi* did not apply to the statutory provision for dispositional departures. 274 Kan. at 452. It reasoned "[p]robation and parole are dispositions alternate to the serving of a sentence, and neither probation nor parole increase or decrease the sentence required to be imposed by statute. [Citation omitted.]" 274 Kan. at 451. It also noted the probation term can be longer than the underlying prison term under 21-4611. 274 Kan. at 451.

The rationale and conclusion in *Carr* has been applied to cases where the trial court imposed a dispositional departure prison sen-

tence under other statutes rather than grant probation. See *State v. Beasley,* 274 Kan. 718, Syl., 56 P.3d 803 (2002) (after being convicted of using a firearm in the commission of a crime, a prison sentence under K.S.A. 2002 Supp. 21-4704a[h] was not a departure under *Apprendi*); *State v. Garcia,* 274 Kan. 708, 56 P. 3d 797 (2002) (after finding the defendant's crimes were gang related, a prison sentence under K.S.A. 2002 Supp. 21-4704a[k] was not a departure under *Apprendi*); *State v. Dean,* 273 Kan. 929, Syl. ¶ 3, 46 P.3d 1130 (2002); *State v. Tisdale,* 30 Kan. App. 2d 524, 525, 43 P.3d 835, *rev. denied* 274 Kan. 1118 (2002) (if a defendant committed a felony while on parole or postrelease supervision, a prison sentence under K.S.A. 2002 Supp. 21-4603d[f] was not a departure under *Apprendi*).

Applying the rationale of *Carr*, Huff's increased probation term is not a departure under *Apprendi* or an appealable sentence under K.S.A. 2002 Supp. 21-4611(c)(5). Neither does it exceed the statutory maximum probation term under K.S.A. 2002 Supp. 21-4611(c)(6).

Affirmed.